UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-60822-SINGHAL/VALLE

WILLIAM MARCUS WOODALL,

    Plaintiff,

v.

KILOLO KIJAKAZI,[1]
Acting Commissioner of
Social Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff's Motion for Summary Judgment (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 16) (together, the "Motions"). U.S. District Judge Raag Singhal has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 4).

After due consideration of the record and the parties' briefs, including Defendant's Response (ECF No. 17), Plaintiff's Reply (ECF No. 18), the parties' Joint Status Report (ECF No. 21), and being otherwise fully advised on the matter, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **GRANTED**, Defendant's Motion for Summary Judgment be **DENIED**, and the Administrative Law Judge's Decision ("ALJ's Decision") be **REVERSED AND REMANDED** for the reasons set forth below.

---

[1] Kilolo Kijakazi has been appointed as Acting Commissioner of the Social Security Administration. Consequently, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

## I.     PROCEDURAL HISTORY

On November 1, 2016, Plaintiff applied for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, alleging a disability onset date of July 27, 2016. (R. 10, 402).[2] Plaintiff's application was denied initially and again upon reconsideration. (R. 294-307, 308-24). Plaintiff requested a hearing, which was held on May 1, 2019, before ALJ James Andres. (R. 28-63, 333-34, 392). Plaintiff, appearing with counsel, two medical experts, and a Vocational Expert ("VE") testified at the hearing. *See generally* (R. 30-62). On June 4, 2019, the ALJ issued a decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act. (R. 10, 21).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-6); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's Decision. (ECF No. 1); *see also* 42 U.S.C. § 405(g). Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.     STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making his determination. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197 (1938)); *Carson*, 440 F. App'x at 864

---

[2] All references are to the record of the administrative proceeding, which was filed as part of the Defendant's Answer. *See* (ECF Nos. 13, 14).

(quoting *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citing *Bloodsworth*, 703 F.2d at 1239).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. § 423 (standard for DIB). A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

3

20 C.F.R. § 404.1520(a)(4). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004). At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by his impairments. 20 C.F.R. § 404.1545(a). The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). The RFC assessment is used to determine whether the claimant can return to his past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted). If a claimant cannot return to his past relevant work, then the ALJ proceeds to Step 5. *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v); *Phillips*, 357 F.3d at 1239. The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform. *Phillips*, 357 F.3d at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id.* Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled. *Id.* The ALJ may determine whether the claimant has the ability to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. part 404,

subpart P, appendix 2); or (2) using a Vocational Expert, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy. *Id.* at 1239-40.

### III. THE RECORD

#### A. Plaintiff's Testimony and Relevant Background

Plaintiff was 60 years old on the alleged onset date, July 27, 2016. (R. 295, 309). Plaintiff worked as an attorney for banks and brokerage firms for his entire career. (R. 60, 417). Plaintiff's impairments include anxiety, depression, human immunodeficiency virus ("HIV"), thrombocytopenia, chronic obstructive pulmonary disease ("COPD"), history of anal and renal cancer, chronic abdominal pain, stool changes, proctitis, hemorrhoids, and fatigue, resulting in an extensive medical record spanning more than 3,000 pages. (R. 38, 40, 46-47, 52, 416); *see also generally* (ECF No. 14) (administrative record). For purposes of this Report, however, the Court summarizes the relevant testimony and background focusing on Plaintiff's impairment of fecal incontinence and the persistence, severity, frequency, and limiting effects of his gastrointestinal symptoms.

At the hearing, Plaintiff testified that he stopped working in 2016 because of intestinal issues, discomfort from sitting, and fatigue. (R. 17, 52, 58). According to Plaintiff, his intestinal problems significantly worsened in the fall of 2018, when he was hospitalized for repeated intestinal blockages. (R. 40). Plaintiff testified that his past chemo and radiation treatments for anal cancer resulted in chronic proctitis, hemorrhoids, and urinary and fecal incontinence. *Id.* Plaintiff further testified that he suffers from alternating diarrhea and constipation, and has "to plan his day . . . and activities . . . around making sure [he] can be close to a bathroom." *Id.* More specifically, Plaintiff explained that when he gets the urge to use the bathroom, he has "to find a bathroom right away, or [he will] have an accident." (R. 41). For example, Plaintiff recounted incidents while he was at work where he had to go home to wash himself and change clothing after

5

accidentally soiling himself. (R. 42). According to Plaintiff, he must use the restroom 7-9 times a day, and more than that on a bad day, for 10 to 15 minutes per use. (R. 61).

Plaintiff further testified that due to his proctitis and hernias, he cannot sit for prolonged periods. (R. 53). Plaintiff estimated he could sit for about one hour before having to stand up or lay down, and then wait at least 30 minutes before sitting again. *Id*. Plaintiff estimated he could stand for about 30-45 minutes without abdominal pain. *Id*. Plaintiff estimated that he could sit a total of 3-4 hours and stand for 1 hour in a workday and could not lift more than 8 pounds. (R. 59). Plaintiff testified that he has frequent medical appointments. For example, in the months preceding the hearing, Plaintiff had nine appointments in April; ten in March; four in February; and eleven in January. (R. 57).[3]

### B. Vocational Expert's Testimony

A VE testified at the hearing and categorized Plaintiff's past relevant work as a lawyer as a sedentary, skilled job with an SVP of 8. (R. 60). The ALJ then asked the VE a series of hypotheticals. In response to the ALJ's first hypothetical, the VE testified that an individual of Plaintiff's age, education, and vocational background, who could work at the light exertional level, could perform Plaintiff's past relevant work as a lawyer.[4] *Id.* In response to the ALJ's second

---

[3] Although this Report and Recommendation focuses on Plaintiff's physical impairment of fecal incontinence and resulting limitations, Plaintiff also testified about his mental impairments. Plaintiff saw Dr. Sergio Badel for depression and anxiety. (R. 53). According to Plaintiff, he was very depressed following his longtime partner's death from cancer, his own cancer diagnosis in 2015, and several surgeries in 2016, 2017, and 2018. (R. 54). His symptoms include chest tightness, difficulty breathing, racing thoughts, and difficulty focusing. (R. 55). Plaintiff experiences these symptoms multiple times during the day. *Id.*

[4] This hypothetical is based on Dr. Joseph Gaeta's testimony as a medical expert at the administrative hearing. *See* (R. 39). Light exertional work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Further, even though the weight lifted may be very little, a job is in this category when it involves sitting most of the time. *Id.* To be considered capable of performing a full or wide range of light work, Plaintiff must have the ability to do substantially all of these activities.

hypothetical, the VE testified that if the individual could sit for only three hours and stand for only one hour during the workday, and lift no more than 8 pounds, then that individual would not be able to perform any work in the national economy.[5] (R. 61). Lastly, if the hypothetical individual needed to use the restroom 7-9 times per day for 10-15 minutes per use, then that individual would also be precluded from all employment.[6] (R. 62).

### C.   Medical Records

As noted above, Plaintiff has an extensive medical history reflected in thousands of pages of medical records. *See* (ECF No. 14) (administrative record) (Exs. 1F-30F). In brief, however, between July 2016 and April 2019, Plaintiff saw numerous doctors for treatment of several conditions, including a history of anal and renal cancer, hernias, abdominal and intestinal problems (including fecal incontinence), COPD, depression and anxiety, HIV, erectile dysfunction, and sleep issues, among others. *Id.* Despite the extensive record and briefs, this Report focuses on the ALJ's consideration of: (i) the medical evidence and testimony regarding Plaintiff's fecal incontinence; and (ii) the testimony of Dr. Joseph Gaeta, the medical expert who testified at the administrative hearing regarding Plaintiff's physical impairments. Plaintiff's other medical history is briefly summarized for context and completeness.

In 1984, Plaintiff was diagnosed with HIV. (R. 46). He subsequently developed idiopathic thrombocytopenia, an HIV-complication, which resulted in the removal of his spleen in 1989. (R. 47, 1417). In 2011, Plaintiff was diagnosed with cancer of the rectum and anus, and underwent surgery and chemoradiation treatments. (R. 727-30, 1200). Post-surgery treatment notes reflect Plaintiff's reports of urgency using the restroom. (R. 736) (April 2012 one-year post-operative report). Thereafter, in May 2015, Plaintiff underwent surgery for cancer of the left kidney.

---

[5] This hypothetical is based on Plaintiff's testimony about his limitations. *See* (R. 59).
[6] This hypothetical is based on Plaintiff's testimony regarding his bathroom usage. (R. 61).

(R. 937, 1388, 1392). In July 2016, Plaintiff underwent surgery for a hernia caused by a 1989 splenectomy. (R. 47, 761, 824-25). Subsequently, in May 2017, Plaintiff underwent a second hernia mesh repair. (R. 1234-35). In July 2017, Plaintiff complained of urinary and fecal incontinence. (R. 1440). In October 2018, Plaintiff underwent additional hernia mesh repair surgery. (R. 2356-58).

## IV. THE ALJ'S DECISION

On June 4, 2019, after reviewing the evidence and conducting the requisite five-step analysis, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 27, 2016, through the date of this decision." (R. 10, 21).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since July 27, 2016, the alleged onset date. (R. 12).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: HIV, COPD, history of anal and renal cancer, small bowel obstruction, and obesity. *Id*. The ALJ found, however, that Plaintiff's mental impairments were not severe. (R. 12-15).

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any one of the Listings. (R. 16).

At Step 4, the ALJ determined that Plaintiff has the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (R. 16). Thus, the ALJ found that Plaintiff could perform his past relevant work as an attorney, which was a sedentary job. (R. 20). Accordingly, the ALJ concluded that Plaintiff was not disabled. (R. 21).

## V. DISCUSSION

Plaintiff raises two main challenges to the ALJ's Decision. First, Plaintiff argues that the ALJ erred in weighing the opinions of several treating doctors, a one-time consultative

psychological examiner, and a testifying medical expert.[7] (ECF No. 15 at 14). Second, Plaintiff argues that the ALJ failed to properly consider Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms. *Id*. at 22-23.

Having reviewed the extensive record and evaluated Plaintiff's numerous challenges on appeal, the undersigned finds that the ALJ's Decision should be reversed and remanded on one dispositive issue because the ALJ failed to clearly articulate his consideration of the evidence and testimony regarding Plaintiff's fecal incontinence and resulting limitations.[8] Because of this error, the undersigned is unable to determine whether substantial evidence supports the ALJ's Decision and whether the ALJ applied the proper legal standards in evaluating the limiting effects of Plaintiff's fecal incontinence.

### A. Applicable Law for Weighing Medical Opinion Evidence

Social Security regulations require the ALJ to consider and evaluate every medical opinion received in determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(c) ("Regardless

---

[7] More specifically, Plaintiff challenges the ALJ's assessment of the opinions of treating physicians Dr. Jeffrey Greene (physical), Dr. Kristen Hagar (physical), and Dr. Badel (mental), and one-time consultative psychological examiner Dr. Roselyn Smith (mental). (ECF No. 15 at 14-22). Dr. Greene treated Plaintiff from March 2016 through March 2017 for HIV and intestinal issues. *See generally* (Exs. 4E, 2F, 3F, 7F). Dr. Hagar treated Plaintiff from July 2017 through January 2019 for intestinal issues. *See generally* (Exs. 9F, 17F, 25F, 29F, 32F). Dr. Badel treated Plaintiff from May 2017 through October 2017 for anxiety and depression. *See generally* (Exs. 10F, 12F). Dr. Smith completed a Psychological Evaluation Report and a Mental Impairment Questionnaire in April 2019. (Exhibit 33F). Plaintiff also challenges the ALJ's evaluation of the opinion of Dr. Gaeta, the medical expert who testified at the hearing and found, among things, that Plaintiff could work at the light exertional level. (ECF No. 15 at 17-19).

[8] The undersigned finds error in the ALJ's evaluation of Dr. Gaeta's opinion and Plaintiff's symptoms. Thus, Court need not consider whether the ALJ erred in his evaluation of the other various medical opinions. *See Maddaloni v. Saul*, No. 18-CV-60928, 2021 WL 1062288, at *6 (S.D. Fla. Mar. 19, 2021) (finding it unnecessary to address other issues raised by claimant when one issue was dispositive). Nonetheless, upon remand, the ALJ is encouraged to more fully articulate the weight given to each medical opinion after a review of the record regarding Plaintiff's fecal incontinence and frequency of bathroom use. *See, e.g.*, *Maddaloni*, 2021 WL 1062288, at * 8 n.10 (remanding case to ALJ on one dispositive issue, but directing that ALJ reconsider the weight assigned to other medical opinions).

9

of its source, we will evaluate every medical opinion we receive."). Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

In weighing medical opinions, an ALJ is required to consider certain factors, including: (i) whether the claimant has an examining or treating relationship with the medical source; (ii) the medical source's area of specialization; (iii) whether the medical source's opinion is well-supported; and (iv) whether the opinion is consistent with the record. *See* 20 C.F.R. § 404.1527(c). Moreover, for applications filed prior to March 2017, an ALJ must generally give controlling weight to the opinion of a treating source[9] about the nature and severity of a claimant's impairments if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

When an ALJ does not give controlling weight to a treating source's opinion, the ALJ must clearly articulate "good cause" for discounting it. *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Id.* (quoting *Phillips*, 357 F.3d at 1241). Ultimately, the ALJ can discount even the opinion of a treating

---

[9] A "treating source" is the claimant's own physician or psychologist who has provided the claimant with medical treatment or evaluation, and who has had "an ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1527(a)(2). An "ongoing treatment relationship" generally means the claimant sees, or has seen, the physician or psychologist "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id.*

10

physician, as long as the ALJ articulates his reasons, and failure to do so is reversible error. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citation omitted); *see also Sryock v. Hecker*, 764 F.2d 834, 835 (11th Cir. 1985) ("The law is clear that . . . the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." (quoting *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981)).

Regardless of what weight is ultimately given, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor" so that a reviewing court may "determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel,* 631 F.3d at 1179 (citation omitted).

    **B.**    **The ALJ Failed to Adequately Articulate the Weight Assigned to Dr. Gaeta's Fulsome Testimony and the Reasons Why**

        *1.*    *Dr. Gaeta's Hearing Testimony*

As a medical expert who reviewed the record evidence, Dr. Gaeta testified that Plaintiff had severe impairments of HIV and COPD, with a history of anal and renal cancer. (R. 38). Dr. Gaeta also noted Plaintiff's history of small bowel obstructions, which were resolved by laparoscopic surgery. *Id*. Dr. Gaeta testified, however, that the record was "a little bit unclear" regarding Plaintiff's complaints of frequent bowel movements because "in some cases, you see it [and] in some places, you don't, which could be an issue." *Id.* Dr. Gaeta opined that Plaintiff could work at a light-level capacity, despite noting that it was unclear whether Plaintiff's complaints during "the past several months" of frequent bowel movements were an "ongoing, long-term issue." (R. 39).

After hearing Dr. Gaeta's testimony and in response to questions from the ALJ, Plaintiff clarified that his intestinal problems go back "many years," but worsened in the fall of 2018. (R. 40). According to Plaintiff, he suffers from the "aftereffects" of cancer surgery and chemo and radiation treatments, which resulted in proctitis, hemorrhoids, incontinence, and diarrhea

alternating with constipation. *Id*. Plaintiff plans his day and activities so he can be near a restroom. *Id*. Plaintiff further testified that when he needs to use the bathroom, he needs to go immediately, or he would soil himself. (R. 41). Furthermore, Plaintiff testified that when he was employed, he "would have to go running around to try and find a bathroom." (R. 42). If he could not find one, Plaintiff would have an accident and would go home to wash himself and change clothes. *Id*. Plaintiff emphasized that this fecal urgency and incontinence "is not just something that started last fall," but has been ongoing. *Id*.

After hearing Plaintiff's testimony, Dr. Gaeta acknowledged that "if [Plaintiff] is to be believed, and, you know, and I think there's reason, because there are notes in the record that he's had this issue, that he would be . . . more limited than I said." (R. 41). Dr. Gaeta further testified that frequent bathroom use would limit Plaintiff to sitting and walking "just three or four hours during the course of the [work]day." *Id*. Dr. Gaeta also testified that Plaintiff may be impaired because of his diarrhea. *Id.* Dr. Gaeta testified that "[w]e just don't have the records that . . . necessarily support what [Plaintiff] says." (R. 45). Nonetheless, Dr. Gaeta acknowledged that radiation could cause the symptoms that Plaintiff describes. (R. 48). Dr. Gaeta also testified that "everything [Plaintiff] says is possible . . . and if he is . . . having that much difficulty, I think it would be difficult for him to . . . work on a full-time basis." *Id.* In reaching that conclusion, Dr. Gaeta pointed to: (i) Exhibit 15F (Dr. Greene's 1/2019 Disability Impairment Questionnaire) reflecting Plaintiff's complaint of chronic diarrhea; (ii) treatment notes from a gastroenterologist reflecting that Plaintiff had diarrhea for three weeks with looser stools every two days; and (iii) Plaintiff's testimony that these problems have existed for several years. *Id.* Dr. Gaeta concluded that if Plaintiff "does indeed have those problems, [which] can happen . . . with post radiation therapy, then there's an . . . ability-to-work type issue." (R. 48).

### 2. *The ALJ's Evaluation of Dr. Gaeta's Testimony*

The ALJ gave "great weight" to the opinion of Dr. Gaeta. (R. 19). In so doing, the ALJ wrote:

> [G]reat weight is given to the opinion of Joseph Gaeta, M.D., the medical expert, who indicated that the claimant was limited to the light level. (Testimony). As shown above, this is consistent with the longitudinal record, including the lack of lasting significant deficits in the claimant's musculoskeletal, neurological, respiratory, gastrointestinal, and genitourinary functioning. (Ex. 6F/6, Ex. 9F/3, Ex. 14F/17, Ex. 17F/3, 74, Ex. 22F/12, Ex. 25F/26, 56, Ex. 29F/51, Ex. 30F/58). While the claimant has undergone some surgical treatment, that was not a consistent issue throughout the period in question, and there is no sign of substantial complications indicative of the extreme limitations alleged. Furthermore, as a medical expert, this doctor is well versed in Social Security Program knowledge, meaning he is aware of the requirements in assigning limitation. Finally, he had access to the majority to [sic] the pertinent evidence, cited to the evidence or lack thereof, and provided detailed explanation for his opinion.

(R. 19).

Despite the facially sound reasoning in the ALJ's Decision, the ALJ fails to explain his rejection of Dr. Gaeta's fulsome testimony regarding the plausibility of Plaintiff's alleged symptoms and the disabling effects of frequent bathroom usage and diarrhea on Plaintiff's ability to work. *See* (R. 41, 48) (Dr. Gaeta's testimony that Plaintiff's diarrhea and frequency of bathroom use may prevent Plaintiff from working). Moreover, to the extent that the ALJ rejected that portion of Dr. Gaeta's opinion by discounting Plaintiff's statements and testimony about the intensity, persistence, and limiting effects of his fecal incontinence and the frequency of his symptoms, it is unclear whether the ALJ's Decision is supported by substantial evidence. *See, e.g.,* (R. 17) (ALJ's exclusive reference to Exhibits 9F/1 and 29F/33 as support for lack of evidence regarding fecal incontinence and frequency of bathroom use).

As discussed below, the ALJ's Decision regarding Dr. Gaeta's testimony and Plaintiff's symptoms ignores considerable evidence regarding Plaintiff's allegations of urgent and frequent bathroom use due to fecal incontinence. Ultimately, regardless of what weight is given to

13

Dr. Gaeta's opinion, the ALJ must state with particularity the weight given to each portion of the opinion and the reasons why so that a reviewing court may "determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Winschel*, 631 F.3d at 1179 (citation omitted); *see also Maddaloni*, 2021 WL 1062288, at *8 (noting that although the ALJ is not required to cite every piece of evidence, he must provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole) (citation omitted).

Here, Plaintiff's first report of bathroom urgency appears in an April 2012 post-colon cancer follow-up with Dr. Stephen Brandeis. (R. 736). Although Plaintiff was improving in terms of post-operative discomfort, irritation and bleeding, Plaintiff reported that "when he has to go to the bathroom[,] he sometimes has some urgency." *Id*. Thereafter, a December 2016 treatment note reiterates Plaintiff's "increased urgency and need to get to bathroom immediately," with "leakage often." (R. 737).

Subsequently, in April 2017, Plaintiff completed a Supplemental HIV Questionnaire in which he reported suffering from diarrhea and fecal incontinence. (R. 621). Thereafter, a July 2017 treatment note reflects Plaintiff's continued urinary and fecal incontinence since his May 2017 hernia surgery. (R. 1242, 1249, 1440) (7/3/17 treatment notes). In November 2017, Plaintiff saw Dr. David Maron with complaints of rectal pain and fecal incontinence, with changes in his stool. (R. 1491). Dr. Maron prescribed Metamucil, but Plaintiff declined Imodium because he feared resulting constipation might aggravate his hernias. (R. 1493, 1495) (11/14/17 treatment notes). In a second Supplemental HIV Questionnaire in November 2017, Plaintiff reported that fecal and urinary incontinence had frequently disrupted his work while he was employed, as he would have to leave meetings or terminate calls to use the bathroom. (R. 648). Plaintiff also reported suffering from diarrhea and "frequent uncontrollable urges to defecate and urinate,"

14

which required that he "be near a bathroom and [be] able to get to [the] bathroom quickly." (R. 648-49).

In January 2018, Dr. Maron again noted Plaintiff's fecal incontinence and leakage. (R. 1521) (1/25/18 treatment note). The treatment note reflects that, despite following the doctor's recommendation to take a fiber supplement, Plaintiff reported minimal improvement with fecal incontinence and "vacillates between 3 bowel movements per day and up to 12 bowel movements per day" with "leakage of liquid or stool on a daily basis." *Id.* Dr. Maron noted that Plaintiff's fecal incontinence was likely due to damage from cancer surgery and radiation. *Id.* In November 2018, Plaintiff complained to P.A. Habib of loose stools every 2 days. (R. 2836). (11/7/18 treatment note). He also complained to Dr. Hagar of continued gastrointestinal issues, and Dr. Hagar noted that many of Plaintiff's medications could cause constipation. (R. 2854). A Medical Treatment Form, submitted to the ALJ in December 2018, reflects Plaintiff's reports of "chronic proctitis, fecal and urinary incontinence from anal cancer in 2011 and radiation treatment." (R. 690, 691). Plaintiff also reported alternating bouts of constipation, caused by medication for incontinence. (R. 2975); *see also* (R. 1252, 1450, 2540, 2851) (complaints of episodes of constipation).

In January 2019, Plaintiff complained to Dr. Abraham Betancourt of erratic bowel movements, ranging from constipation to diarrhea. (R. 2975). Dr. Betancourt opined that Plaintiff's symptoms were "likely due to several prior surgeries." *Id*. Also in January 2019, Drs. Greene and Hagar, Plaintiff's treating physicians, each completed a Disability Impairment Questionnaire. (R. 1416-20, 3060-64). Dr. Greene opined that Plaintiff's chemotherapy and radiation treatments for anal cancer resulted in bowel incontinence and fecal leakage. (R. 1417, 1420). Dr. Greene further opined that Plaintiff needs "constant and immediate access to bathroom" and has "10-15 bowel movements daily." (R. 1418, 1420). According to Dr. Greene, Plaintiff's

symptoms were severe enough to constantly interfere with attention and concentration, and Plaintiff would need to take 8-10 unscheduled and unpredictable bathroom breaks during the day and likely be absent more than three times per month. (R. 1419-20).

Dr. Hagar, for her part, noted Plaintiff's "intermittent constipation and fecal frequency (12-14 times/day)" and chronic abdominal pain related to bowel movements. (R. 3061). Dr. Hagar further opined that Plaintiff's symptoms would likely increase in a competitive work environment, that Plaintiff would need unscheduled and unpredictable 20-30 minutes break every one to two hours during an 8-hour workday, and would likely be absent from work more than 3 times per month. (R. 3063-64).

Also in January 2019, Plaintiff's treating psychologist, Dr. Badel, opined that Plaintiff experiences high levels of depression and anxiety related to his inability to control his bowel movements, and "constantly worr[ies] about the availability of a toilet." (R. 1438-39).

Against this record, the ALJ's cursory reference to Exhibits 9F/1 and 29F/33,[10] *see* (R. 17), is insufficient to permit a meaningful review of whether substantial evidence supports the ALJ's determination or whether the ALJ applied the proper legal standards in assessing Dr. Gaeta's testimony about the disabling effects of Plaintiff's fecal incontinence and frequent bathroom needs and, relatedly, Plaintiff's statements about the intensity and limiting effects of his symptoms. Here, the ALJ focused on one aspect of the medical opinions and ignored other parts of the record that corroborated Plaintiff's statements and testimony about the severity and frequency of his symptoms. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("It is not enough to

---

[10] Specifically, Exhibit 9F/1 is a July 2017 treatment note from Dr. Hagar noting "some urinary leakage" and "some fecal incontinence since his surgery." (R. 1242). Exhibit 29F/33 is a November 2018 treatment note by P.A. Habib noting "looser stools every 2 days with 2 colace and 1/4 capful of miralax daily." (R. 2836).

discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The [ALJ's] review must [consider] and evaluate the record as a whole.").

Accordingly, the ALJ's Decision should be remanded for the ALJ to consider the medical record more fully regarding Plaintiff's fecal incontinence and bathroom frequency. *See, e.g., Charles W. v. Saul,* No. 18-CV-5212-JKL, 2019 WL 13212621, at *6-7 (N.D. Ga. 2019) (remanding for ALJ to better explain rationale for discounting claimant's testimony about need for frequent bathroom breaks); *Davis v. Comm'r of Soc. Sec.*, No. 15-CV-1120-Orl-DAB, 2016 U.S. Dist. LEXIS 110484, at *16-17 (M.D. Fla. Aug. 18, 2016) (finding that ALJ erred in formulating an RFC without accommodation for frequent/unscheduled restroom breaks); *Holcomb v. Comm'r of Soc. Sec.*, No. 18-CV-511-Orl-18TBS, 2018 U.S. Dist. LEXIS 216102, at *16-17 (M.D. Fla. Nov. 19, 2018) (finding that ALJ erred in omitting accommodation for ready access to a bathroom without adequate explanation), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 215895 (M.D. Fla. Dec. 20, 2018); *see also Raduc v. Comm'r*, 380 F. App'x 896, 898 (11th Cir. 2010) (reversing and remanding for the ALJ to consider effects, if any, of claimant's irritable bowel syndrome on RFC); *Powell v. Astrue*, 250 F. App'x 960, 964-65 (11th Cir. 2007) (remanding for ALJ to re-assess claimant's claimed incontinence by either accepting claimant's testimony or by articulating an adequate reason to reject it).

  **B.**  **The ALJ Erred in Assessing Plaintiff's Subjective Testimony**

Social Security Regulations require that an ALJ evaluate a claimant's "statements about the intensity, persistence, and limiting effects of [her] symptoms" in relation to the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4). A claimant's "symptoms, including pain, will be determined to diminish his capacity for basic work activities to the extent that his alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

17

An ALJ must give "explicit and adequate reasons" for discrediting a claimant's subjective statements. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir.1995).

Here, the ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . claimants' statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. 17). Relevant to Plaintiff's complaints of fecal incontinence and frequent bathroom use, the ALJ summarily found that "the record does not document the frequency alleged. (Ex. 9F/1, Ex. 29F/33)." *Id*. However, for the reasons discussed in Section V.A, above, the undersigned recommends that the ALJ's Decision be reversed and remanded for the ALJ to consider the medical record more fully regarding Plaintiff's fecal incontinence and frequency of bathroom use. Against that record, the ALJ's cursory reference to Exhibits 9F/1 and 29F/33, *see* (R. 17), is insufficient to permit a meaningful review of whether substantial evidence supports the ALJ's determination or whether the ALJ applied the proper legal standards in assessing Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms. Thus, on remand, the ALJ should re-assess Plaintiff's statements regarding fecal incontinence and frequent bathroom use based on the record as a whole and then explain his reasons for either accepting claimant's testimony or articulate adequate reasons to reject it.[11] *See, Charles W.*, 2019 WL 13212621, at *6-7 (remanding for ALJ to better explain rationale for discounting claimant's testimony about need for frequent bathroom breaks).

---

[11] As Dr. Gaeta testified, Plaintiff's symptoms, if believed, are material to the outcome of the case. (R. 41, 48-49). The VE similarly testified that if an individual needed to use a restroom 7-9 times per day for 10-15 minutes per use, that individual would be precluded from employment (R. 62).

## VI.    RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 15) be **GRANTED**, that Defendant's Motion for Summary Judgment (ECF No. 16) be **DENIED**, and that the ALJ's Decision be **REVERSED AND REMANDED** for the reasons set forth above.

Within **14 days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2022); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida, on April 3, 2023.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Raag Singhal
    All Counsel of Record